USCA1 Opinion

 

 April 25, 1996 United States Court of Appeals For the First Circuit ____________________ No. 95-1190 UNITED STATES OF AMERICA, Appellee, v. CHARLES MARTIN EDGAR, Defendant, Appellant. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this Court issued on April 19, 1996, is amended as follows: On page 19, delete footnote 9 in its entirety. United States Court of Appeals For the First Circuit ____________________ No. 95-1190 UNITED STATES OF AMERICA, Appellee, v. CHARLES MARTIN EDGAR, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Selya, Stahl, and Lynch, Circuit Judges. ______________ ____________________ Frances L. Robinson, with whom Davis, Robinson & White was on ____________________ _________________________ brief, for appellant. James C. Rehnquist, Assistant United States Attorney, with whom ___________________ Donald K. Stern, United States Attorney, was on brief, for the United _______________ States. ____________________ April 19, 1996 ____________________ LYNCH, Circuit Judge. Charles Martin Edgar, LYNCH, Circuit Judge. ______________ formerly a U.S. Department of Commerce employee, was convicted of three counts of making false statements on his federal workers' compensation claims, and of one count of mail fraud arising from a false automobile accident claim to an insurer. He was acquitted on other charges, including bankruptcy fraud.1 Edgar was sentenced to one year and one day plus two years of supervised release and was fined $5000. His appeal argues that joinder of the bankruptcy fraud, workers' compensation fraud and insurance fraud was improper, as was the refusal to sever. He strongly asserts reversible error in the testimony of his civil-claim attorney before the grand jury which, he alleges, violated his attorney-client privilege. He also argues that the issue of materiality of the alleged false statements should have been submitted to the jury under the rule established later in United States v. Gaudin, 115 S. Ct. 2310 (1995), that denying _____________ ______ him discovery was error, and that the evidence was insufficient to convict in any event. We affirm. Two arguments merit close discussion. Edgar argues that it was improper and harmful for the government to have  ____________________ 1. The court granted Edgar's motions for acquittal on eleven counts of mail fraud based on the workers' compensation claims, on one count of using a false social security number in connection with his bankruptcy, and on eleven counts of bankruptcy fraud. The jury returned a verdict of not guilty on one count of making false statements to the Department of Labor and could not reach a verdict on nine other counts. -2- 2 joined such disparate charges as workers' compensation fraud, auto insurance fraud and bankruptcy fraud into a single indictment, saying the common allegation of fraud is too weak a thread to sew them all together, and that the counts should have been severed. While the argument has some force, he was acquitted on the bankruptcy charge and we find no harm to him from its joinder with the other charges. Edgar also argues that the government trampled on his attorney-client privilege and that this denied him due process. The government subpoenaed to the grand jury the lawyer who had represented Edgar on the automobile accident claim. The lawyer's initial declinations to answer questions about Edgar's communications on grounds of attorney-client privilege gave way in the face of continued questioning by the prosecutor. Edgar says he first learned of his attorney's grand jury testimony after he was indicted and before trial. While troubled by what happened, we find that there was no prejudice to Edgar at trial and therefore his remedy, if any, is not the vacating of his conviction. Background __________ Edgar's checkered reporting on his employment status undergirds all counts on which he was convicted. In 1984 Edgar filed claims for compensation to the Office of Workers' Compensation Programs ("OWCP") of the Department of Labor based on back injuries suffered in a 1981 plane crash, -3- 3 allegedly work-related. The claim eventually ripened to a claim of total disability from 1987 on. The federal government paid him benefits, after objecting, for injury for the period from 1981 through 1986. It had balked at paying beyond 1986, but Edgar again won on appeal and he was paid to 1989. In May of 1991, in an effort to get payments for certain periods between 1989 and 1991, he submitted three forms CA-8 to the OWCP. These documents formed the basis for the counts of conviction. On other dates, he submitted other forms CA-8 as well as forms EN1032-0389 ("1032"). These forms are important to the OWCP in considering claims for continuing compensation. The forms CA-8 required that certain information be provided if the claimant was working. The employment information is used by OWCP to determine a claimant's wage earning capacity, and thus the level of his benefits. Edgar was in fact working as a self-employed accountant during this period, but he did not provide the information required. Nor did he mention that he operated and managed a bar, which he also owned, from 1985 to 1990.2 Instead, Edgar reported that he was neither self-employed nor employed by others. The forms include a warning that any "false statement,  ____________________ 2. During the time for which he claimed disability, Edgar also attended law school. He eventually became licensed to practice law in Massachusetts, but was suspended following his conviction in this case. In the Matter of Edgar, No. 95- ______________________ 004BD (Bd. of Bar Overseers Jan. 20, 1995). -4- 4 misrepresentation, [or] concealment of fact" could subject the submitter to a felony prosecution. Edgar says the forms were not material, as the department had already turned him down on this claim. But, based in part on those forms, he did receive continuing compensation for the post-1989 period. All told, he received more than $250,000 in benefits from the government. In January 1987 Edgar was involved in an automobile accident and asserted he injured his back and could not work. Attorney Robert Koditek represented him in his claims for injury and lost income against the other driver's insurer and to his own insurance carrier, Commercial Union. Edgar submitted a form to his own insurer, purportedly executed by a company bookkeeper but in fact forged by Edgar, stating, as to lost income, that his accounting company paid him a yearly salary of $45,600. Attorney Koditek, representing Edgar, submitted a demand letter to Commercial Union on October 12, 1988, asserting that Edgar had been totally disabled as a result of the auto accident and demanding the policy limits be paid him. In support of Edgar's claim for damages for lost income, the letter attached "copies of Mr. Edgar's federal income tax returns for the years 1985, 1986, and 1987." Those signed returns showed income for 1985 of $62,392 and for 1986 of $61,876. But Edgar had never filed any tax return in either 1985 or 1986; so, the government -5- 5 charged, the representation was false. On January 16, 1989, Commercial Union settled Edgar's claim, paying him $75,000. Attorney Koditek testified at trial that Edgar had supplied him with the copies of the tax returns given to Commercial Union to support his claim. Joinder and Denial of Motion for Severance __________________________________________ The 37 count indictment returned against Edgar charged three fraudulent schemes. The first 24 counts charged Edgar with mail fraud, alleging that Edgar had wrongfully obtained money through the mails (specifically, the disability checks) and had made false statements to the Department of Labor. These counts were premised on Edgar's falsely representing his employment and earning capacity in connection with his disability claim from 1989 to 1992. Another count involved Edgar's submission, through Attorney Koditek, of false documents and a demand letter making false statements to his automobile insurer in 1988. The remaining twelve counts charged Edgar with filing documents containing false statements in 1991 in connection with Edgar's bankruptcy. The scheme alleged was that Edgar filed a bankruptcy petition in California, falsely representing California was his state of domicile, listing a false social security number and concealing assets and income from his former wife and other creditors. -6- 6 Edgar argues that the counts charging these three schemes should not have been joined because they were insufficiently similar. He argues that the single common characteristic, misrepresentation of material facts, was not enough to satisfy the standards for joinder. He also argues that evidence of one scheme would not be admissible in a trial on another scheme and thus the jury could infer from the evidence of one fraud that Edgar was predisposed to engage in another fraud. Edgar's argument that there was an improper joinder of claims against him in the indictment, which the district court refused to undo, raises two concerns. Edgar argues first that there was not sufficient similarity among the counts of conviction to permit joinder. Second, he postulates a harmful spillover effect from all of the counts, even those on which he was acquitted, which prejudiced him and led to his conviction. He also claims that, apart from the initial wrongful joinder, the district court should have allowed his motion for severance. The standard for joinder is set forth in Rule 8(a), Fed. R. Crim. P., which provides: Two or more offenses may be charged in the same indictment . . . if the offenses charged . . . are of the same or similar character . . . . "Similar" does not mean "identical," United States v. Werner, _____________ ______ 620 F.2d 922, 928 (2d Cir. 1980), and similarity must be -7- 7 analyzed in terms of how the government saw its case at the time of indictment. United States v. Natanel, 938 F.2d 302, _____________ _______ 306 (1st Cir. 1991), cert. denied, 502 U.S. 1079 (1992). As ____________ Judge Friendly commented in Werner, under the mandate of the ______ Speedy Trial Act, joinder serves the purposes of economy of resources. 620 F.2d at 928. Denial of a motion for relief from misjoinder is reviewed de novo. United States v. ______________ Chambers, 964 F.2d 1250 (1st Cir. 1992). Further, a ________ misjoinder is not reversible if it was harmless. United ______ States v. Lane, 474 U.S. 438, 444-50 (1986); United States v. ______ ____ _____________ Randazzo, __ F.3d __, __, No. 95-1489, slip op. at 6 (1st ________ Cir. Apr. 8, 1996). Edgar also argues that even if joinder was proper, his motion to sever the different schemes should have been granted. Under Rule 14, Fed. R. Crim. P., "[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses . . ., the court may order . . . separate trials of counts." The denial of a motion for severance is reviewed for abuse of discretion, and must be affirmed unless there is a "strong showing of evident prejudice." United States v. O'Bryant, _____________ ________ 998 F.2d 21, 25 (1st Cir. 1993). In determining whether counts are properly joined, this court considers such factors as "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame -8- 8 in which the charged conduct occurred." United States v. _____________ Taylor, 54 F.3d 967, 973 (1st Cir. 1995) (internal citations ______ omitted).3 The government argues that the test is satisfied because the workers' compensation fraud and the automobile accident fraud involved the same modus operandi of claimed ______________ total disability following an asserted injury to the back, an asserted loss of income, the submission of false official forms, and the misrepresentation of other employment in order to rake in large sums. As to timing, the workers' compensation fraud overlapped the auto insurance fraud. Witnesses and testimony would also overlap. Evidence as to the auto accident fraud would be used on the claimed disability from a back injury from the plane crash, and to establish that Edgar misrepresented his earnings and earning capacity. We believe there were sufficient similarities between the workers' compensation and insurance fraud schemes to permit joinder of those counts.  ____________________ 3. An earlier case in this circuit applied an arguably more stringent standard for the government to join two or more offenses under Rule 8(a). See United States v. Yefsky, 994 ___ _____________ ______ F.2d 885, 895 (1st Cir. 1993) (finding proper joinder where there was "'substantial identity of facts or participants'" underlying two charged schemes, quoting United States v. _____________ Levine, 546 F.2d 658, 662 (5th Cir. 1977)). Given that Edgar ______ used the same basic mechanism, misrepresenting earning capacity in seeking compensation lost due to a back injury, in both the workers' compensation and auto insurance fraud, we believe that joinder of the counts underlying these schemes would have been proper even under the test applied in Yefsky. Given our disposition of this issue, we need not ______ decide whether Yefsky set a more rigid test for joinder of ______ offenses than the language of Rule 8(a) warrants. -9- 9 However, like the district court, we are disturbed by the joinder of the bankruptcy fraud.4 We discern no "common scheme or plan." See Randazzo, __ F.3d at __, No. ___ ________ 95-1489, slip op. at 5. The bankruptcy fraud charges, relating to events in 1991, were brought under different statutes and the supposed victim was Edgar's ex-wife (and possibly other unspecified creditors). The location was different. The bankruptcy filings were all with the court in California, while the other frauds took place primarily in Massachusetts. The modes of operation were different. In the workers' compensation and automobile insurance frauds, Edgar asserted an injury to his back, which resulted in the loss of earnings. The alleged bankruptcy fraud did not involve an attempt to obtain payment for an injury. Rather, it was allegedly an attempt to avoid obligations to his ex- wife, with whom he had an acrimonious relationship, and to force her to press her claim in an inconvenient forum. Edgar claims he was prejudiced because the evidence for each scheme had a harmful spillover effect, and the jury convicted him not because of specific evidence showing his  ____________________ 4. The district judge, in granting the motion for acquittal on the bankruptcy charges after the government had presented its case, noted the potential problems with the joinder of the bankruptcy fraud. He said, "[T]his type of indictment looks like you are piling it on . . . ." He also thought that "th[e] bankruptcy case was transferred here to boost up the other false statement cases" and that there was an "unusual" number of schemes alleged. -10- 10 guilt, but because of its perception that he was a dishonest man.5 Specifically, Edgar posits that the jury heard evidence that (1) he collected $75,000 in settlement for the auto insurance claim; (2) he had an extremely acrimonious divorce; (3) he filed for bankruptcy in California and made false statements that he resided there; (4) he has owned various properties and has established trusts at different times; (5) he filed false information in the bankruptcy court regarding his assets and social security number. Even assuming the bankruptcy count was improperly joined, any error was harmless. It did not result in "actual prejudice" because it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Lane, 474 U.S. at 449 (internal quotations ____ omitted); see also O'Neal v. McAninch, 115 S. Ct. 992, 995 ________ ______ ________ (1995). Edgar was acquitted by the court of the bankruptcy fraud and of several counts of mail fraud in the workers' compensation scheme before the matter went to the jury. Of the remaining thirteen workers' compensation counts, the jury proved itself capable of making distinctions: it acquitted Edgar of one, could not reach a verdict on nine and convicted  ____________________ 5. Edgar also claims that, had the schemes been severed, he may have testified for one, but not another. Edgar does not expand upon this claim of prejudice, and an "unexplicated assertion" that he would have testified at one trial is not enough to establish prejudicial joinder. United States v. ______________ Werner, 620 F.2d 922, 930 (2d Cir. 1980). ______ -11- 11 on three. The jury thus showed itself clearly capable of discriminating among the evidence applicable to each count, even within the workers' compensation fraud, thus reducing the risk of any prejudice from evidence on the bankruptcy count. See United States v. Stackpole, 811 F.2d 689, 694 ___ _____________ _________ (1st Cir. 1987) (jury's acquittal on one of several counts suggests jury not confused by joinder). Moreover, the court gave appropriate limiting instructions.6 See Chambers, 964 ___ ________ F.2d at 1251; United States v. Attanasio, 870 F.2d 809, 815 ______________ _________ (2d Cir. 1989) (misjoinder can be rendered harmless by proper limiting instruction); cf. Lane, 474 U.S. at 450 (analyzing ___ ____ joinder of defendants under Fed. R. Crim. P. 8(b)7). The exhibits relating solely to the bankruptcy fraud were struck.  ____________________ 6. The court instructed the jurors that they should "put out of [their] minds any reference or evidence concerning Counts 1 through 11 charging mail fraud and Counts 26 through 36 charging bankruptcy fraud and the use of a false Social Security number, because [the court has] ruled, as a matter of law, that the government has failed to prove all of the necessary elements of each of those charges." The court further instructed, "You must decide the remaining charges as if those charges that I have removed from your consideration, mail fraud and bankruptcy fraud, were never made and as if no evidence was submitted in support of those charges. You must limit your consideration. . . . And you must determine if the government has sustained its burden of proof beyond a reasonable doubt, excluding all references to or evidence concerning Counts 1 through 11 and 26 through 37."  7. Fed. R. Crim. P. 8(b) allows for the joinder of two or more defendants if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." -12- 12 Some of the evidence as to the bankruptcy and insurance schemes was admissible as to the workers' compensation scheme, thus resulting in no prejudice. See ___ Stackpole, 811 F.2d at 694; cf. Lane, 474 U.S. at 450 _________ ___ ____ (analyzing joinder of defendants under Rule 8(b)). Any statements that Edgar filed with the bankruptcy court stating his income for the years encompassed by the workers' compensation fraud would have been admissible on the latter issue. The statements made to the insurance company in connection with the insurance fraud were admissible on the workers' compensation issue, particularly as they related to Edgar's back injury and his loss of earnings. Finally, there was substantial independent evidence on the counts of conviction. The fraud against the insurance company and the three counts of submitting falsified documents to the Department of Labor were supported by evidence unrelated to the bankruptcy. Thus, Edgar cannot meet his burden of showing prejudice on the denial of the motion for severance as to any of the counts. Garden-variety arguments of spillover -- such as if the jury found defendant guilty of A, that alone would lead to the conclusion that he was guilty of B -- without more, are insufficient to require severance. Taylor, 54 F.3d ______ at 973. Appellants must demonstrate actual prejudice. That is a particularly difficult burden for Edgar to meet, because -13- 13 the spillover from his acquittal on the bankruptcy count and certain of the workers' compensation counts could just as easily be posited to have worked to his benefit. The law of severance and joinder is a stricter master than Edgar's claimed error. See Natanel, 938 F.2d at 307-08. ___ _______ The Grand Jury Testimony ________________________ On June 1, 1993, Attorney Koditek testified under subpoena before the grand jury. Edgar says that neither the government nor Attorney Koditek notified him that Koditek would testify under subpoena. Edgar complains that he did not learn of the grand jury testimony of his civil-claim lawyer until after he was indicted. Even then, the prosecution denied Edgar's requests for a copy of Attorney Koditek's testimony. Ten days prior to trial, the new prosecutor assigned to the case appropriately provided the transcript to the defendant. This is what the transcript8 showed: AUSA: Do you recall at some point making, as part of your claim to Commercial Union Insurance Company -- submitting tax returns to commercial Union evidencing Mr. Edgar's income for the years prior to the accident? KODITEK: I may have. AUSA: Well, what's your recollection, sir? KODITEK: I don't recall. AUSA: Mr. Koditek, if you'd look at Exhibit 22 [the October 12, 1988, demand letter] and  ____________________ 8. The district court allowed the government's motion to disclose certain portions of Attorney Koditek's grand jury testimony for purposes of responding to this appeal. -14- 14 if you could read that carefully to yourself. KODITEK: (Witness looking at document) AUSA: Have you looked at that document carefully, sir? KODITEK: Yes, I have. AUSA: Does that refresh your recollection at all as to whether you submitted tax returns to Commercial Union Insurance Company as evidence of Mr. Edgar's wage- earning ability? KODITEK: It appears that I did. AUSA: Do you recall any discussions with Mr. Edgar concerning those tax returns? KODITEK: Any discussions would be subject to the attorney/client privilege. AUSA: Well, what I'm asking you is not what, in fact, was said, but I'm asking whether the subject of the tax returns ever came up. KODITEK: I would presume the subject came up. AUSA: Did Mr. Edgar say to you at any time, in connection with your submission of those tax returns to Commercial Union Insurance Company, that those tax returns were not, in fact, identical to the ones filed with the Internal Revenue Service? KODITEK: Any conversation would be subject to the attorney/client privilege. AUSA: Well, I think that in this particular instance, sir, they would not. What I'm asking you is whether Mr. Edgar indicated to you, in substance or in fact, that he was submitting or having you submit to the Commercial Union Insurance Company tax returns which were not the same. That is to say that they were fraudulent tax returns that were not submitted to the Internal Revenue Service. KODITEK: No, he never said that to me. AUSA: Was it your understanding, sir, that the tax returns that he submitted were, in fact, genuine tax returns as filed with the Internal Revenue Service? KODITEK: That would be my understanding. What is clear is that Attorney Koditek was questioned about the substance of his conversations with his -15- 15 client, that he asserted attorney-client privilege twice, that the prosecutor responded that the matter was not covered by privilege and that Koditek then answered. This was apparently done without the client, Edgar, being aware of the testimony. Nor was there any judicial review of whether the testimony was indeed privileged. At trial Edgar did object on grounds of attorney- client privilege to any testimony from Attorney Koditek. The court rejected the privilege claim. Attorney Koditek testified that he represented Edgar in connection with the Commercial Union claim, that he wrote two letters to Commercial Union in connection with the claim, and that the tax returns were enclosed with one of the letters. Attorney Koditek authenticated the letters, but declined to answer on grounds of privilege the question of who gave him the material (including the tax returns) to be enclosed with the demand letter to the insurer. The district court ruled that because the tax returns were disclosed to the insurance company, the fact that Edgar gave the returns to Koditek was not privileged. Attorney Koditek answered that he received the tax returns from Mr. Edgar. Edgar chose not to cross- examine on this point and never asserted a defense of advice of counsel or that the attorney's actions were not authorized. At trial, Attorney Koditek did not testify, as he did to the grand jury, about whether Edgar had ever told -16- 16 him that the tax returns submitted to Commercial Union had not been submitted to the IRS. The government did put on independent evidence that these returns were never filed with the IRS. Edgar filed several motions regarding his attorney's testimony. He argued a fruit-of-the-poisonous- tree theory that Attorney Koditek's testimony before the grand jury was illegal and so the indictment should be dismissed or evidence should be suppressed. There is precedent for an argument that a court may quash an indictment based upon evidence directly obtained from or derived from breach of the attorney-client privilege. See ___ United States v. Omni International Corp., 634 F. Supp. 1414, _____________ ________________________ 1421 (D. Md. 1986) (but doubting that dismissal was an appropriate remedy under United States v. Morrison, 449 U.S. ______________ ________ 361 (1981)); People v. Fentress, 425 N.Y.S.2d 485 (Dutchess ______ ________ Co. Ct. 1980); Baltes v. Doe I, 57 U.S.L.W. 2268 (Fla. Cir. ______ _____ Ct. 1988). Some federal courts have held that if the prosecutor induces the breach, suppression of evidence derived from the breach is the appropriate remedy, unless prejudice would remain, in which case the indictment may be dismissed. See, e.g., United States v. Rogers, 751 F.2d _________ ______________ ______ 1074, 1079 (9th Cir. 1985) (no dismissal when any prejudice to defendant could be neutralized by excluding at trial confidential communications wrongfully obtained from -17- 17 defendant's former attorney). But "[w]hen a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances." Whitehouse v. United __________ ______ States Dist. Ct., 53 F.3d 1349, 1359 (1st Cir. 1995) __________________ (internal citation omitted). Indeed, the Supreme Court has said that prejudice is required to dismiss an indictment for prosecutorial misconduct. Bank of Nova Scotia v. United _____________________ ______ States, 487 U.S. 250, 263 (1988). Edgar also sought ______ discovery as to whether the proper procedures were followed to subpoena Attorney Koditek. And, he argued that the government had failed to follow the procedures in United ______ States v. Zolin, 491 U.S. 554 (1989). Those motions were all ______ _____ denied. Attorney-Client Privilege and Due Process Arguments ___________________________________________________ Edgar argues on appeal that the questioning of Attorney Koditek before the grand jury violated his rights to due process and to the assistance of counsel. We will assume, arguendo, that Edgar did not waive his rights under ________ the attorney-client privilege and that those rights were violated by Attorney Koditek's testimony before the grand jury. But even with those assumptions it does not follow that the appropriate remedy is to vacate his conviction. -18- 18 Contrary to Edgar's arguments, no Sixth Amendment right to counsel is even implicated here, as the lawyer called to the grand jury was not criminal defense counsel. See, e.g., Rogers, 751 F.2d at 1077-78. Nonetheless, we are ___ ____ ______ troubled by what happened and seek guidance in case law discussing the district court's adoption of Rule 3:08 of the Rules of the Supreme Judicial Court of Massachusetts, and in the teachings of United States v. Zolin, 491 U.S. 554 (1989). _____________ _____ A long simmering dispute in Massachusetts over prosecutors serving grand jury subpoenas on counsel resulted in the affirmance by this court, equally divided en banc, of a district court opinion that approved the Local Rule that adopted the disciplinary rules of the Supreme Judicial Court, particularly S.J.C. Rule 3:08, Prosecutorial Function 15 ("PF 15"). See United States v. Klubock, 832 F.2d 664 (1st Cir. ___ _____________ _______ 1987) (en banc by an equally divided court) ("Klubock II") ___________ (plaintiff prosecutors sought a declaratory judgment against the Board of Bar Overseers that the rule was invalid as applied to federal prosecutors), aff'g 639 F. Supp. 117 (D. _____ Mass. 1986). The net effect is that federal prosecutors in Massachusetts must comply with PF 15, which provides: It is unprofessional conduct for a prosecutor to subpoena an attorney to a grand jury without prior judicial approval in circumstances where the prosecutor seeks to compel the attorney/witness to provide evidence concerning a person who is represented by the attorney/witness. -19- 19 S.J.C. Rule 3:08, PF 15. The prosecutor here argues that PF 15 does not literally apply as Edgar was represented in the past by ___ Attorney Koditek, but was not represented by him at the time of the subpoena, as the language of PF 15 requires. Nonetheless, the prosecution represented to the district court that it had complied with PF 15 and had obtained prior judicial approval to serve the subpoena. But, as Edgar points out, the record is devoid of proof on this point. The subpoena here did not go to the target's criminal defense counsel and so does not raise the issues of potential abuse specific to that situation. See Whitehouse, ___ __________ 53 F.3d at 1354. But Edgar and Attorney Koditek were at least potentially placed in the hypothetical situation described in the panel opinion vacated by Klubock II9: __________ The serving of a subpoena under such circumstances will immediately drive a chilling wedge between the attorney/witness and his client. This wedge is the natural consequence of several underlying factors created by this anomalous situation. Most obvious is the fact that the client is uncertain at best, and suspicious at worst, that his legitimate trust in his attorney may  ____________________ 9. The court in Klubock II produced for publication the ___________ vacated panel opinion, United States v. Klubock, 832 F.2d 649 _____________ _______ (1st Cir. 1987) ("Klubock I"), because the members of the en _________ banc court referred to the panel opinion. Klubock II, 832 __________ F.2d at 665. The opinion in Klubock II affirming the ___________ district court did refer to the portions of Klubock I quoted _________ here, id. at 667, although neither Klubock I nor Klubock II ___ _________ __________ is controlling precedent, Whitehouse, 53 F.3d at 1354. __________ -20- 20 be subject to betrayal. And because the subpoenaed attorney/witness may himself feel intimidated, this may in fact take place if there is not even minimal ethical control regulating the subpoenaing of an attorney/witness to seek evidence against his client. More subtle, but perhaps more important in terms of the ethical setting within which PF 15 is framed, is the immediate conflict of interests created between the attorney/witness and his client by the serving of a subpoena in the context of what is contemplated by PF 15. As a witness, the attorney/witness has separate legal and practical interests apart from those of his client. These interests may or may not coincide with those of the attorney/witness and his client. The mere possibility of such a conflict is sufficient to create a problem. A minimal overview by an impartial observer, as is provided by PF 15, can go far in preventing the creation of these ethical conflicts between the attorney/witness and his client. United States v. Klubock, 832 F.2d 649, 652-53 (1st Cir. ______________ _______ 1987) (footnote omitted) ("Klubock I"). We believe these _________ considerations apply to the relationships with former counsel as well as with present counsel. There may be an implicit threat to the attorney called to testify about a client to the grand jury that the attorney will become a target himself10 should the prosecutor think he knowingly participated in the fraud.  ____________________ 10. Indeed, at trial Attorney Koditek indicated an intent to assert the right under the Fifth Amendment not to incriminate himself if called to testify. By the time of Attorney Koditek's trial testimony, he had been granted immunity by the prosecution. -21- 21 This is particularly so where the prosecution asserts that the privilege must give way to the crime-fraud exception. The lawyer may be tempted to reveal privileged conversations in order to avoid becoming a target himself.11 Ideally, counsel receiving a subpoena will give notice to a client and consistently assert the privilege on behalf of a client. Ideally, a prosecutor faced with an assertion of privilege by an attorney witness will seek a judicial determination of whether the privilege is valid. But we do not live in an ideal world. See Jerome Frank, If Men Were Angels (1942). ___ ___________________ We are loath to say the prosecutor here crossed over the line. But we are equally loath to say, as the government urges, that there is no line and there is never a remedy.12  ____________________ 11. While an attorney may, under the self-defense doctrine set forth in S.J.C. Rule 3:07, Code of Prof. Resp., DR 4- 101(C)(4), reveal information without prior notice to the client, the doctrine does not apply unless there is an "accusation" of wrongful conduct. We do not think the prosecutor here made an "accusation" against counsel that would have triggered this provision. 12. Indeed, other courts have concluded that there are limits to how far government investigators may go in attempting to induce a breach of the attorney-client privilege. In Omni, the district court chastised the ____ government for interviewing an attorney's secretary. 634 F. Supp. at 1431, 1439. See also United States v. Valencia, 541 ________ _____________ ________ F.2d 618 (6th Cir. 1976) (improper for government to pay attorney's secretary for information about the attorney's clients). But, attorneys are themselves responsible for protecting the client by asserting the privilege when it applies. See, e.g., United States v. Rasheed, 663 F.2d 843, _________ _____________ _______ 854 (9th Cir. 1981), cert. denied, 454 U.S. 1157 (1982); _____________ Omni, 634 F. Supp. at 1422-23, 1431. ____ -22- 22 The first line of defense to protect Edgar's privilege lay in the hands of his lawyer. A lawyer has an obligation not to reveal client confidences. S.J.C. Rule 3:07, Code of Prof. Resp., DR 4-101. A lawyer also has an obligation to assert privilege on behalf of a client. Id.; ___ see also In re Impounded Case (Law Firm), 879 F.2d 1211, 1213 ________ _______________________________ (3d Cir. 1989). Generally, an attorney has an obligation to assert the privilege on behalf of the client and not to disclose confidential information until there is a judicial determination that there is no privilege. ABA/BNA Lawyers _______________ Manual on Professional Conduct 55:1307-08 (1989). Even if _______________________________ there is an assertion that there is no privilege because the crime-fraud exception applies, the attorney is required to give notice to the client. S.J.C. Rule 3:07, Code of Prof. Resp., DR 7-102(B)(1). If the attorney violates these duties, he is at risk at least of a malpractice suit and of professional discipline. Concomitantly, a prosecutor has certain obligations beyond zealous representation of the government when the prosecutor interrogates witnesses before the grand jury. For example, if a witness invokes the privilege against self- incrimination, the prosecutor should cease questioning as to the particular subject to which the privilege was addressed. United States v. Mandujano, 425 U.S. 564, 581 (1976). But ______________ _________ ___ see United States v. Benjamin, 852 F.2d 413, 420 (9th Cir. ___ _____________ ________ -23- 23 1988) (testing validity of reliance on privilege not prosecutorial misconduct unless prosecutor harangued witness or improperly commented on assertion of privilege), vacated _______ on other grounds, 490 U.S. 1043 (1989). Thus, the second ________________ line of defense is that the prosecutor will not harangue a witness, but will promptly bring the issue to a court.  The third line of defense is that there will ultimately be a disinterested judicial determination of the issue.13 In United States v. Zolin, 491 U.S. 554 _______________ _____ (1989), the Supreme Court set forth the procedure for obtaining judicial review when the attorney-client privilege is consistently asserted and the government opposes the privilege. Id. at 572. The government may obtain in camera ___ review of the information alleged to be privileged, at the discretion of the court, upon a "'showing of a factual basis adequate to support a good faith belief by a reasonable person' . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Id. (quoting Caldwell v. District Court, ___ ________ ______________ 664 P.2d 26, 33 (Colo. 1982)). Apparently, no such showing was made in this case because Attorney Koditek so quickly  ____________________ 13. The judicial protection of rights inherent in PF 15 does not resolve this situation. That a judge has ex parte _________ authorized issuance of a subpoena to counsel does not mean that a determination has been made that any assertion of privilege before the grand jury has been decided in the prosecution's favor. -24- 24 succumbed to the prosecutor's questioning. Under Zolin, a _____ prosecutor may not obtain disclosure, or even judicial review, of the privileged information upon a simple assertion that the crime-fraud exception applies, as happened before the grand jury here. See id. at 571. ___ ___ Nevertheless, Edgar ultimately had the benefit of that third line of defense. On the facts of this case we see no prejudice, and therefore no basis to vacate the conviction. See Fed. R. Crim. P. 52; Bank of Nova Scotia, ___ ___________________ 487 U.S. at 254-55 (requiring prejudice). Edgar does not now assert that the trial testimony by Koditek invaded his privilege. The district court instructed the prosecutor to limit his questions to what was disclosed to the insurance company and to avoid the communications between Edgar and Attorney Koditek. On the significant point as to whether Edgar had or had not confided to Koditek that the tax returns to be provided to Commercial Union had not been filed with the IRS, Attorney Koditek did not so testify at trial, as he had to the grand jury. Indeed, the evidence that the tax returns had not been filed was introduced independently through a Certification of Lack of Record from the custodian of federal tax returns. On the point that Edgar provided the tax returns to Attorney Koditek, Edgar does not claim on appeal that the trial court erred in holding that information was not privileged. -25- 25 Edgar argues there was prejudice in that he was deprived of the choice as to whether to assert an advice of counsel defense. Edgar chose not to assert that the false tax returns were prepared and submitted on advice of counsel. He was free to have made such an argument, if supported, at trial, whatever Koditek's grand jury testimony. Had he made such an argument, of course, he would have waived any claim that the attorney-client privilege protected those discussions. See Glenmede Trust Co. v. Thompson, 56 F.3d ___ ___________________ ________ 476, 486-87 (3d Cir. 1995); Saint-Gobain/Norton Indus. v. ___________________________ General Elec. Co., 884 F. Supp. 31, 33 (D. Mass. 1995). ___________________ Moreover, there was no argument or evidence that Koditek's actions in connection with the demand letter were not authorized. The choice as to whether to make such arguments was not foreclosed to him and was a strategy choice by trial counsel. Nor is this a fruit-of-the-poisonous-tree situation that would require suppression of evidence or quashing the indictment. Cf. Rogers, 751 F.2d at 1078-79. Edgar has not ___ ______ convinced us that he would not have been indicted but for his attorney's testimony. Edgar argues that the only reason the government knew that Attorney Koditek obtained the tax returns from Edgar was because of Koditek's grand jury testimony. However, that inference was self-evident. Further, the Koditek letter and attached returns came from -26- 26 Commercial Union's claim file and there was independent evidence identifying the signature on the unfiled tax returns as Edgar's. There being no prejudice, there was no reversible error. Fed. R. Crim. P. 52. Sufficiency of Evidence of Materiality ______________________________________ In his reply brief14 in this court Edgar makes _____ the argument for the first time that the jury was not permitted to decide the issue of materiality of his allegedly false statements, in violation of the principles announced by the Supreme Court in United States v. Gaudin, 115 S. Ct. 2310 _____________ ______ (1995). Gaudin was decided after his trial but before his ______ appeal. The issue, not having been raised in his principal brief to this court, is waived. See United States v. ___ _____________ Gabriele, 63 F.3d 61, 67 n.9 (1st Cir. 1995); United States ________ _____________ v. DeMasi, 40 F.3d 1306, 1318 n.12 (1st Cir. 1994), cert. ______ _____ denied, 115 S. Ct. 947 (1995); United States v. Brennan, 994 ______ _____________ _______ F.2d 918, 922 n.7 (1st Cir. 1993). Had Edgar raised the Gaudin issue initially on appeal, this court would review the ______ failure to submit materiality to the jury under the plain error test because Edgar also failed to raise the issue in the district court. See Randazzo, __ F.3d at __, No. 95- ___ ________  ____________________ 14. Edgar filed a motion with this court for leave to present a claim under United States v. Gaudin, 115 S. Ct. ______________ ______ 2310 (1995), in his reply brief. The motion was granted, "without prejudice, however, to the government's right to argue, or the court's right to conclude, that the issue ha[d] been waived." -27- 27 1489, slip op. at 17; see also United States v. Collins, 60 _________ _____________ _______ F.3d 4, 8 (1st Cir. 1995). Edgar argues that we should nonetheless review the district court's failure to submit the element of materiality to the jury for "plain error" just as though the issue were raised in his initial brief. See ___ Randazzo, __ F.3d at __, No. 95-1489, slip op. at 17. ________ However, we think a higher standard must be met, and as review for "plain error" lies "within the sound discretion of the Court of Appeals," we decline to apply that standard in the circumstances of this case.15 See United States v. ___ ______________ Olano, 113 S. Ct. 1770, 1779 (1993); Fed. R. Crim. P. 52(b); _____ Taylor, 54 F.3d at 972 ("appellate courts will notice ______ unpreserved errors only in the most egregious circumstances"). Edgar did properly preserve an objection to the sufficiency of the evidence on materiality, but that we also reject. Edgar argues that the evidence was insufficient to establish that his omissions from the forms CA-8 for which he was convicted were material. A statement is material if it has a natural tendency to influence or is capable of affecting or influencing a government function. United ______ States v. Arcadipane, 41 F.3d 1, 7-8 (1st Cir. 1994). Edgar ______ __________  ____________________ 15. Even if we were to apply the plain error test, we would find Edgar had not met his burden. In light of the very strong evidence of guilt, we do not think there was a "miscarriage of justice" that would warrant correction of any error. United States v. Olano, 113 S. Ct. 1770, 1779 (1993). _____________ _____ -28- 28 argues that because the decision not to grant him benefits had already been made and because the forms were filed late, his failure to set forth his self-employment was not material. However, the standard is not whether there was actual influence, but whether it would have a tendency to influence. The district director for the OWCP testified that on a claim for disability, whether one may work or has worked has considerable influence on the amount of benefits warranted. Thus, the district court did not err in finding Edgar's false statements to be material. See id. (affirming ___ ___ a finding of materiality for false statements of employment on a Form 1032). Fair Credit Reporting Act _________________________ Edgar's last claim of error is that there was an abuse of discretion in the denial of his motion for discovery of the government's compliance with the Fair Credit Reporting Act, 15 U.S.C. 1681-1681t. Edgar claimed to have needed this information in order to determine whether a motion to dismiss the indictment or a motion to suppress evidence was warranted. Even assuming that the government violated the FCRA by improperly acquiring data concerning Edgar's finances, Edgar has not shown how any use of the acquired information could have prejudiced him in the grand jury to support dismissal of the indictment. See, e.g., Bank of Nova ___ ____ ____________ Scotia v. United States, 487 U.S. 250 (1988). Nor would ______ ______________ -29- 29 suppression be required for a violation of the FCRA. Suppression of the evidence is not a mentioned remedy under the FCRA, nor is discovery of whether the government complied with the Act. See 15 U.S.C. 1681n; cf. United States v. ___ ___ _____________ Kington, 801 F.2d 733, 737 (5th Cir. 1986) (refusing to _______ suppress records obtained in violation of the Right to Financial Privacy Act when Congress did not provide for that remedy in statute), cert. denied, 481 U.S. 1014 (1987); cf. ____________ ___ also United States v. Payner, 447 U.S. 727, 735 (1980) ____ ______________ ______ (evidence otherwise admissible may not be suppressed on the ground that it was seized unlawfully from a third party); United States v. Caceres, 440 U.S. 741 (1979) (evidence ______________ _______ obtained in violation of IRS regulation need not be suppressed). There was thus no abuse of discretion in the denial of the motion. Affirmed. _________ -30- 30