**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Gerald L. ROGERS,**
**Defendant-Appellee.**

**No. 83–5037.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 7, 1983.

Decided Jan. 15, 1985.

Lourdes G. Baird, Los Angeles, Cal., for plaintiff-appellant.

Pierce O'Donnell, O'Donnell & Gordon, Los Angeles, Cal., for defendant-appellee.

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Miller made the following statement in his September 22, 1977 affidavit:

Before: HUG and NELSON, Circuit Judges, and EAST,* District Judge.

HUG, Circuit Judge:

The Government appeals from the district court's dismissal of an indictment because of governmental misconduct. The district court dismissed the indictment with prejudice on the ground that a Government investigator improperly interfered with the attorney-client relationship between Rogers and an attorney who had previously represented him. We reverse.

I

Special Agent William Taylor of the Internal Revenue Service was responsible for the Government's criminal investigation into a motion picture tax shelter sold by Gerald Rogers. Rogers's business dealings, including the motion picture tax shelter, were also the subject of investigation by the Securities and Exchange Commission, the California Department of Corporations, and the California Department of Justice. Taylor learned from the California Department of Corporations that Ira Miller had served as Rogers's lawyer for a period of time during 1975 and 1976, and Taylor arranged to meet with Miller.

On September 22, 1977, Taylor and IRS agent Carl DiUbaldo met with Miller at Miller's office. Taylor identified himself as an IRS special agent, and he told Miller that he was conducting a criminal investigation of the motion picture tax shelter. During the interview, Miller told Taylor that he did not give Rogers a tax opinion and that he had no involvement in the tax shelter. At Taylor's request, Miller gave a sworn statement.[1]

On June 5, 1979, after learning that Miller had talked to another attorney on be-

I, Ira J. Miller, state that: I reside at Pacific Palisades, California and that I practice law at 4676 Admiralty Way, Suite 701, Marina del Rey, California 90291, telephone No. (213) 870–6304. I represented Gerald L. Rogers for the purposes of handling an inquiry from the

half of Rogers in 1975 or 1976 about purchasing an old television series, Taylor talked to Miller on the telephone about Miller's negotiations regarding the television series. Taylor made a file memorandum recounting that telephone conversation.[2]

In April 1982, Rogers was charged with nine counts of mail fraud in violation of 18 U.S.C. § 1341 and twenty-one counts of aiding and assisting the filing of a false tax return in violation of 26 U.S.C. § 7206(2). The charges arose out of the motion picture tax shelter.

In December 1982, Rogers moved to dismiss the indictment with prejudice on four grounds: (1) pre-indictment delay, (2) Government misconduct in connection with the timing of arrest and setting of bail, (3) Government misconduct in the form of interference with the attorney-client relationship, and (4) grand jury abuse. The

Government then moved in limine for a ruling on the admissibility of Miller's testimony. ·

In January 1983, the district court granted the motion to dismiss the indictment with prejudice on the ground that Taylor improperly interfered with the attorney-client relationship between Miller and Rogers. The district court also ruled that the first two grounds for dismissal of the indictment urged by Rogers, pre-indictment delay and misconduct regarding arrest and bail, could not be the basis for dismissal because they had not resulted in prejudice to Rogers. The district court did not rule on the final ground urged for dismissal, grand jury abuse, nor did it rule on the Government's motion in limine.

II

■■ Because it is a drastic step, dismissing an indictment is a disfavored reme-

Department of Corporations of the State of California and to handle any Security Exchange Commission matters that might arise out of his business activities. Mr. Rogers first contacted me in the last few days of November or first few days of December, 1975. My representation ceased in August, 1976 when I was substituted out of a case entitled *The People of the State of California vs. Gerald L. Rogers, et al.,* during August 1976. Thereafter, on April 15, 1977 my Motion to be relieved as counsel in that same case for Lakme investments, a Panamanian corporation, was approved by the Court.

The tax shelters which Mr. Rogers allegedly sold during 1975 and 1976 were not conceived by me nor was my advice requested concerning their validity from a tax point of view. In personal discussions with Mr. Rogers regarding the tax shelter programs which were the subject of the case entitled *The People of the State of California vs. Gerald L. Rogers, et al.,* I told him that I did not believe that there was more than a 50% chance of the tax deductions holding up on audit by the IRS. I indicated that the crux of the issue would be the validity for tax purposes of the non-recourse notes to the Enthusiasm for Youth Foundation. I stated that the notes could be attacked as being a part of a joint venture, a finance arrangement or as not bona fide as being excessive in relation to the product being sold. I further pointed out, however, that if the films made money and the notes were fully paid, the shelter would stand up. These statements would have been made sometime between February and July 1976. Mr. Rogers did not

seek my advice regarding structure of any package that he intended to sell from a tax point of view. The tax packages which were the subject of the above-named lawsuit were not seen by me until after they had been sold, nor was my advice requested as to the validity of those packages at any time. Mr. Rogers did discuss his plans for distribution of films, but no discussions were had as to whether or not such plans had been consummated or initiated. Mr. Rogers's planned program of distribution was to four-wall the films in the same manner as Sunset International Distributors did theirs. This program entailed renting a theatre, within which to show the films and saturating the market area on non-network television with ads for the films. From statements Mr. Rogers made at various times, it was clear that Mr. Rogers considered himself an expert on taxation in the movie area and basically he acted as his own tax attorney, which included doing his own research and structuring his own tax packages.

2. The district court observed that only the second paragraph of Miller's statement in the file memorandum was possibly protected by the attorney-client privilege. This paragraph reads as follows:

MILLER could not specifically remember what ROGERS's instructions to him were regarding the purchase, but they were along the lines of stalling the deal. MILLER was of the opinion that ROGERS was using MILLER's position as an attorney, as a front or excuse for not completing the transaction.

dy. *See United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966). Courts, however, have dismissed indictments based on constitutional grounds or on the court's inherent supervisory power. *See United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). In either case, an indictment may not be dismissed for governmental misconduct absent prejudice to the defendant. *United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1391–1392 (9th Cir. 1983) (constitutional grounds), *cert. denied*, — U.S. ——, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984); *United States v. Owen*, 580 F.2d 365, 367 (9th Cir.1978) (supervisory power).

Miller's sworn statement discloses that Rogers did not ask for, and Miller did not give, formal advice or an opinion on the validity of the tax shelter. The district court essentially concluded that this information was protected by the attorney-client privilege, and that Taylor intentionally sought to obtain the information from Miller by suggesting threateningly that Miller's involvement in the tax shelter was the subject of criminal investigation. The district court found "substantial and devastating prejudice" in Miller's disclosure of confidential information to Taylor. In particular, the district court found that Miller's disclosure resulted in "the total dissolution of defendant's major defense of good faith." The court also found that the "disclosure undoubtedly had a very strong influence upon the Government's decision to proceed with the investigation and ultimately seek an indictment." The court found that Miller's statements to Taylor disclosed "the ultimate fact, absence of good faith." The district court stated that the prejudice touching on Rogers's due process rights prevented a trial on the merits and that the court was also exercising its supervisory powers.

## III

We are here concerned with the question of whether Agent Taylor's contact with Rogers's former attorney was so outrageous as to justify the dismissal of the indictment with prejudice. Although the district court's decision and the briefs of the parties deal principally with the issue of whether the questions and answers would be covered by the attorney-client privilege, the question is actually whether the questions and answers involved a breach of the attorney's professional obligation of confidentiality. The next question is—even assuming that the agent asked questions that resulted in revealing confidential communications from the client—whether this justifies the dismissal of the indictment.

The attorney-client privilege is an evidentiary rule designed to prevent the forced disclosure in a judicial proceeding of certain confidential communications between a client and a lawyer. In this case, there has not been any forced disclosure of a confidential communication in a judicial proceeding. Whether the communication between Rogers and his attorney, Miller, is in fact privileged and, thus, whether evidence of that communication can be objected to and excluded at trial, is a matter to be resolved in the trial court if the case proceeds to trial.

The central question in this case is whether an agent of the Federal Government has improperly induced an attorney to breach his ethical duty of confidentiality to his client and, if so, whether that conduct was so outrageous, and resulted in such prejudice to the defendant, as to justify dismissing the indictment with prejudice.

## IV

We must emphasize at the outset that this is not a case in which the defendant's sixth amendment right to counsel is involved. Miller was not an attorney who was in the process of representing Rogers in defending against a criminal charge; Miller was, instead, a potential witness because of past representation. Thus, cases in which a Government agent or Government informers violated a constitutional right of a defendant by interfering with the

attorney-client relationship in the course of a criminal defense are not applicable. Here, we have only a situation in which a potential witness, who was an attorney, talked to federal agents about past representation of a client; this, at most, involved a breach of the attorney's ethical obligation of confidentiality.

Even in cases in which there has been a violation of the defendant's sixth amendment constitutional rights by interference with the attorney-client relationship, the relief has not been to dismiss the indictment with prejudice. *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). The Court in *Morrison* stated:

> Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. Our relevant cases reflect this approach.

*Id.* at 364-65, 101 S.Ct. at 667-68. The Court then observed that in two cases in which law enforcement officers improperly overheard pretrial conversations between the defendant and his attorney, these transgressions by the Government did not result in dismissal of the indictment but, rather, only a reversal of the conviction, leaving the Government free to proceed with a new trial. The Court cited, as cases in point, *Black v. United States,* 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966) and *O'Brien v. United States,* 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967). *Id.* 449 U.S. at 364-65, 101 S.Ct. at 668. The Court went on to state:

> Similarly, when before trial but after the institution of adversary proceedings, the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted.

*Id.* at 365, 101 S.Ct. at 668. The Court cited, as cases in point, *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

The Court also noted in *Morrison* that similar principles apply to other constitutional provisions. It observed that suppression of evidence, and not dismissal of the indictment, is the appropriate remedy when evidence is discovered in violation of the fifth amendment. 449 U.S. at 365-66 & n. 3, 101 S.Ct. at 668-69 & n. 3 (citing *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966)). Furthermore, the Court noted that when there have been searches and seizures in violation of the fourth amendment, the remedy has not been to dismiss the indictment but, instead, to deny the prosecution the fruits of its transgression by suppressing the evidence at trial. *Id.* 449 U.S. at 366, 101 S.Ct. at 668-69.

▪ When the action of Government agents involves a violation of the defendant's constitutional rights and yet does not require dismissal of the indictment, it would follow, *a fortiori,* that merely inducing a witness to violate an ethical obligation of confidentiality to a client would not require the dismissal of the indictment. The Court in *Morrison,* however, did leave open the caveat that perhaps the dismissal of an indictment could be appropriate when there was continuing prejudice from the constitutional violation that could not be remedied by a new trial or suppression of evidence. *Id.* at 366 n. 2, 101 S.Ct. at 668 n. 2.

▪ The district court here found that the action of the Government agent created devastating prejudice to the defendant. We seriously doubt that the act of a Government agent in inducing a witness to breach an ethical obligation would justify the dismissal of an indictment, even if it were prejudicial; however, we will assume that, in some circumstances, it would. We

further doubt that the action of the agent was wrongful;[3] however, even assuming that it was, we find no substantial prejudice to the defendant. If, in fact, Miller revealed a confidential communication in violation of his ethical obligations as an attorney, suppression of that evidence at trial is the appropriate remedy.

In *Bishop v. Rose*, 701 F.2d 1150 (6th Cir.1983), a state prisoner sought habeas corpus relief because the prosecution had used confidential statements protected by the attorney-client privilege to impeach the defendant's testimony at trial. The defendant in *Bishop* had presented an alibi defense during his state trial. The confidential statements used by the prosecution were in a 14-page handwritten document the state prisoner had prepared for his defense counsel, and the statements detailed the prisoner's whereabouts during the alibi period. The Sixth Circuit affirmed the grant of habeas corpus relief because the confidential statements had been used for the benefit of the prosecution and to the detriment of the defendant. The court, however, held that dismissal of the indictment was not required and that a new trial was an appropriate remedy. 701 F.2d at 1157 (citing *Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564).

We similarly conclude that dismissal of the indictment against Rogers is not an appropriate remedy. We are satisfied that any prejudice to Rogers from the Miller disclosures to Taylor, if these disclosures were improper, can be neutralized by the exclusion of improperly obtained evidence at trial. *See United States v. Irwin,* 612 F.2d 1182, 1187–88 (9th Cir.1980) (no prejudice because incriminating statements which contradicted trial statements were not referred to in cross-examination or offered for impeachment purposes). Just as the prosecution's knowledge of confidential statements in *Bishop* did not require dismissal of the indictment, the Government's knowledge of the fact that Rogers's tax shelters were not formulated as a result of

the advice of counsel does not require dismissal of the indictment against Rogers.

■ The fact that the Miller disclosures might have encouraged the IRS to continue its investigation of Rogers and, ultimately, to seek an indictment does not justify dismissing the indictment. The prejudice relates only to the investigatory stage and does not affect Rogers's ability to defend himself at trial. There is a fundamental distinction between the use of privileged information at trial, and its use during the investigatory period. *See United States v. Calandra,* 414 U.S. 338, 349, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974) ("Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial.").

This distinction has been noted by other courts. In *United States v. Mackey,* 405 F.Supp. 854 (E.D.N.Y.1975), the court considered whether the admission before the grand jury of evidence that violates the attorney-client privilege might warrant dismissal of the indictment. The court noted the proposition in *Calandra,* 414 U.S. at 345, 94 S.Ct. at 618, that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted ... on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination." From this the court concluded that "[i]t would seem to follow, *a fortiori,* that the right to invoke a common law testimonial privilege, which does not stand on a constitutional footing, does not imply any right to a dismissal of an indictment." *Mackey,* 405 F.Supp. at 861. This conclusion was cited with approval in *United States v. Wolfson,* 558 F.2d 59, 66 n. 22 (2d Cir. 1977). We conclude that the inducement of a violation of an ethical obligation of confidentiality, which encourages the Government to continue an investigation, does not warrant dismissal of an indictment that results from that investigation.

3. See *infra* p. 1080 & note 4.

Rogers also argues that the Miller disclosures prejudice his ability to present a good faith reliance on counsel defense because Miller's prior sworn statement will affect the substance of Miller's testimony if he is called to testify. Essentially, this argument requires this court to make two questionable assumptions. First, the argument is premised on the assertion that Miller lied in his prior sworn statement. On the record before us, there is no way to evaluate this assertion. Second, and more importantly, the argument presumes that Miller would lie if called as a witness. Such a speculative presumption is not a proper basis for dismissing the indictment against Rogers.

## V

Taylor's conduct is clearly distinguishable from outrageous governmental conduct in other cases involving intrusion into the attorney-client relationship. *See e.g., United States v. Levy*, 577 F.2d 200 (3d Cir.1978); *United States v. Orman*, 417 F.Supp. 1126 (D.Colo.1976). These cases involved surreptitious eavesdropping on attorney-client consultations either by means of an informant or by electronic surveillance. In contrast, Taylor openly talked with Miller, identified himself as an IRS agent, and stated the purpose of his investigation. Taylor employed no subterfuge to deprive Miller of the opportunity to decline to answer because of his ethical duty of confidentiality. The fact that Miller failed to assert the ethical obligation does not transform Taylor's investigation into governmental misconduct. Normally, an attorney is in a better position to protect the confidences of his client and to know the scope of his ethical duty to his client than is an IRS agent. *See United States v. Rasheed*, 663 F.2d 843, 854 (9th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982).

In this regard, we note that Miller potentially could have conveyed information to Taylor that was not violative of his ethical duty of confidentiality. For example, if Miller had advised Rogers with respect to the tax shelter, a simple statement that he had advised Rogers would not have violated his ethical obligation if Miller did not reveal any confidential information. *See United States v. Brickey*, 426 F.2d 680, 685 (8th Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970). We decline to hold that the IRS may not seek to discover whether the subject of a criminal tax investigation relied on advice of counsel. Such a holding would lead to investigative and judicial inefficiency. If, for example, the IRS learns, as a result of investigation, that a person has a strong good faith reliance on counsel defense, the IRS may decide to terminate the investigation and not to seek an indictment. This would conserve investigative and judicial resources.

Moreover, Taylor could properly inquire as to whether Miller, himself, was involved in any illegal activity concerning the tax shelter. Miller's possible complicity in criminal fraud would not be immunized because he was an attorney giving advice to a client. Furthermore, the ethical obligation of confidentiality would not extend to any communication furthering illegal activity. *United States v. Friedman*, 445 F.2d 1076, 1086 (9th Cir.) *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971). Miller had a right to respond in defense of his questioned participation in any illegal tax shelter promotions.[4] The fact that the investigation did not ultimately implicate the attorney in illegal activity does not retroactively convert legitimate investigation into governmental misconduct.

We conclude that Taylor's conduct, even if improper, was not so "patently egre-

---

4. *See* Rule 1.6 of the Model Rules of Professional Conduct of the American Bar Association, which states in relevant part:

A lawyer may reveal [information relating to the representation of a client] to the extent the lawyer reasonably believes necessary ...

to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

gious" as to warrant dismissal of the indictment against Rogers. *See United States v. Gonsalves,* 691 F.2d 1310, 1317 n. 9 (9th Cir.1982), *vacated on other grounds,* — U.S. ——, 104 S.Ct. 54, 78 L.Ed.2d 73 (1983).

REVERSED and REMANDED.