**UNITED STATES of America**

v.

**G. Thomas NEBEL.**

No. 3–92–00102.

United States District Court,
M.D. Tennessee,
Nashville Division.

· June 9, 1993.

Hal McDonough and Wendy Goggin, Asst. U.S. Attys., Nashville, TN, for plaintiff.

J. Sedwick Sellers, III, Washington, DC and Larry D. Thompson, Atlanta, GA, for defendant Thomas Nebel.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the defendant Nebel's motion (filed April 23, 1993; Docket Entry No. 355) to dismiss the indictment based on the government's violation of his Fifth and Sixth Amendment rights, including Nebel's right to due process; the memorandum (filed April 23, 1993; Docket Entry No. 356) in support of the motion; the government's response (filed April 26, 1993; Docket Entry No. 360) to the motion; and the defendant Nebel's reply (filed May 7, 1993; Docket Entry No. 373) to the government's response.

For the reasons stated below, the Court denies Mr. Nebel's motion to dismiss the indictment.

### I.

■ Mr. Nebel's deposition was taken on March 5–6, 1990, by assistant United States Attorney Janice Bossing. The deposition nominally was taken in connection with an ongoing civil forfeiture matter. However, as the Court previously has determined, the real reason for the deposition was to obtain information from Mr. Nebel in a contemplated criminal action against Mr. Nebel and several other individuals. *See* memorandum (entered April 7, 1993; Docket Entry No. 323).

Although the Court suppressed the deposition, *see* order (entered April 7, 1993; Docket Entry No. 324), Mr. Nebel now argues that the government's use of the deposition during the two-year investigation which lead to his indictment prejudiced him and so tainted the entire judicial process that the only adequate remedy is dismissal of the indictment.[1] *See* memorandum in support at 1–2. The government responds that Mr. Nebel has failed to demonstrate that this extraordinary remedy is justified by the facts of this case. *See* response at 1. In addition, the government does not concede that the deposition was taken in violation of Mr. Nebel's Fifth and Sixth Amendment rights. *Id.*

Before discussing the remedy sought by Mr. Nebel in his present motion, the Court will address the government's concern regarding the constitutional bases for its prior holding. Upon further consideration, the Court agrees with the government that its decision to suppress the deposition cannot be supported by the Sixth Amendment as currently interpreted by the courts of the United States. "[A] person's Sixth ... Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (1972). At the time of Mr. Nebel's deposition, a criminal task force had been formed and Mr. Nebel was at least the subject of a criminal investigation. However, no formal charges had been brought against him. Therefore, although surely the spirit of the Sixth Amendment had been violated by the government, the letter of the Amendment was not violated.

However, the Court's prior order is grounded independently in the Fifth Amendment, and therefore, remains in full force and effect. The Court will turn now to the ques-

---

1. Mr. Nebel filed this motion to dismiss after a jury was unable to reach a unanimous verdict on any count in the Second Superseding Indictment. One co-defendant, Thomas Brothers, was acquitted of all charges. Charges against the other co-defendant, Russell Brothers, were severed to be tried later. Russell Brothers subsequently pled guilty to all counts against him on April 29, 1993. Mr. Nebel's second trial is scheduled for August 3, 1993.

tion of whether the entire indictment should be dismissed.

## II.

■ "[T]he appropriate remedy for a Fifth Amendment violation is generally suppression of the evidence." *United States v. Marshank,* 777 F.Supp. 1507, 1521 (N.D.Cal. 1991). Dismissing an indictment because of prosecutorial misconduct is a disfavored remedy which should be used sparingly by the courts. *United States v. Rogers,* 751 F.2d 1074, 1076–77 (9th Cir.1985); *United States v. Busher,* 817 F.2d 1409, 1411 (9th Cir.1987). "Sparing use, of course, does not mean no use. Even 'disfavored remedies' must be used in certain situations." *United States v. Omni Int'l Corp.,* 634 F.Supp. 1414, 1438 (D.Md.1986) (citation omitted). "[D]ismissal of the indictment is appropriate where continuing prejudice from the constitutional violation cannot be remedied by suppression of the evidence." *Marshank,* 777 F.Supp. at 1521–22.

■ In this case, Mr. Nebel urges that dismissal of the indictment is the appropriate remedy under either a constitutional violation theory or pursuant to the Court's supervisory powers. Under either theory, "an indictment may not be dismissed for governmental misconduct absent prejudice to the defendant." *Rogers,* 751 F.2d at 1077; *United States v. Griffith,* 756 F.2d 1244, 1249 (6th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). Once the defendant establishes prejudice, the burden of persuasion shifts to the government. *See Alderman v. United States,* 394 U.S. 165, 183, 89 S.Ct. 961, 972, 22 L.Ed.2d 176, 192 (1969) (cited with approval in *United States v. Valencia,* 541 F.2d 618, 623 (6th Cir.1976)). In addition, to dismiss an indictment pursuant to the Court's supervisory powers, the defendant must "demonstrate[ ] that 'prosecutorial misconduct is a long-standing or common problem in [the] district.'" *Griffith,* 756 F.2d at 1249 (quoting *United States v. Nembhard,* 676 F.2d 193, 200 (6th Cir.1982), *cert. denied,* 464 U.S. 823, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983)).

The Court must determine, therefore, whether Mr. Nebel actually was prejudiced by the government's misconduct. Under the Court's supervisory powers rationale, the Court also must determine whether there is a long-standing history of prosecutorial misconduct in this district. If these criteria are met, the Court finally will decide whether the continuing prejudice from the misconduct so permeated the entire case that it could not be remedied by suppressing the deposition.

■ Mr. Nebel has made no allegations of long-standing prosecutorial misconduct in this district. Further, the Court finds that there has been no pattern of prosecutorial misconduct in this district. Therefore, the indictment cannot be dismissed pursuant to the Court's supervisory powers. If it is to be dismissed, it must be because of the violation of Mr. Nebel's Fifth Amendment rights.

Although it is a disfavored remedy, courts have not shied from their responsibility to dismiss an indictment when the conduct of the prosecution calls for that drastic measure. In *Marshank, supra,* the district court dismissed the indictment because of the government's virtual recruitment of the defendant's attorney who aided the government agents and prosecutors in investigating the defendant. *Marshank,* 777 F.Supp. at 1518–23. In another case, the indictment was dismissed because the government attorneys altered and created documents requested by the defense, government agents testified untruthfully during pre-trial proceedings, and the government attorneys showed a total lack of candor regarding these deceptions during colloquies with the court. *See Omni Int'l Corp.,* 634 F.Supp. at 1436–40.

In both of these cases, and in others where the indictment was dismissed, the violations of the defendants' constitutional rights were so great that it was impossible to excise the taint of the government's constitutional transgressions from the prosecution of the defendants. The fruit of the constitutional violations were the indictments themselves. Therefore, dismissal of the indictment was the only appropriate remedy. The facts of this case, however, do not call for dismissal of the indictment.

Mr. Nebel argues convincingly that he gave the government a lot of information

during his deposition which fleshed out the bare bones of the documents the government already had in its possession. He explained transactions and detailed meetings with key witnesses. This might be sufficient to establish prejudice against Mr. Nebel. However, what Mr. Nebel has failed to explain is how this differs from the substantial cooperation he had already provided to the Florida authorities.[2] He cannot be prejudiced by his deposition if it merely reinforced the information the government already had access to. As Mr. Nebel himself argues, the government did not segregate the information it received from its different sources. Therefore, the Court cannot find sufficient prejudice to Mr. Nebel from the government's misconduct to warrant the extreme remedy of dismissing the indictment.

### III.

For the reasons discussed above, the Court denies Mr. Nebel's motion to dismiss the indictment.

An appropriate order shall be entered.

2. Mr. Nebel had cooperated greatly with the Florida authorities. He turned over the corporate documents to agent Wolfe on October 12, 1988 pursuant to subpoenas. He continued to manage the corporate assets so that they would not waste before the seizure proceedings could be finalized. He answered Florida attorneys' and investigators' questions regarding the documents. He kept track of various lawsuits that had been filed in Tennessee courts. He even searched the title to Russell Brothers' house in Nashville for the Florida authorities.

Pablo Perhacs was the Florida assistant statewide prosecutor who drafted the Florida civil forfeiture complaint regarding Russell Brothers' assets. According to Mr. Perhacs, the "ultimate source" of the information which formed the basis of the civil complaint was Mr. Nebel, with whom he had regular contact. On June 12, 1989, Mr. Perhacs telephoned Janice Bossing regarding the Tennessee aspects of the Florida forfeiture action. From the time of Mr. Perhacs' initial conversation with Ms. Bossing, there was considerable cooperation and sharing of information between Florida and the Middle District of Tennessee regarding the corporate assets being controlled by Mr. Nebel.