## Pritts v. Wendy's of Greater Pittsburgh Inc.

C.P. of Allegheny County, no. GD97-3173.

*John P. Gismondi,* for plaintiffs.
*Nora Barry Fischer,* for defendants.

WETTICK, *J.,* June 23, 1998—The subject of this opinion and order of court is defendants' motion for a protective order based on Rule 4.2 of the Rules of Professional Conduct which governs communication with person represented by counsel.

This lawsuit arises out of a claim that in March 1995, the minor plaintiff ate a hamburger at a Pittsburgh area Wendy's restaurant that was contaminated with a strain of E-coli known as E-coli 0157-H7. Plaintiffs have raised negligence claims that are directed to the conduct of employees within the store (the failure to handle the ground beef before, during, and after cooking so as to prevent cross-contamination; the failure to properly cook the ground beef; the failure to observe proper sanitary techniques) and negligence claims that are di-

rected to the conduct of Wendy's employees who do not work at the store (the failure to properly select and test the ground beef; the failure to properly store and transport the ground beef; the failure to provide appropriate standards, procedures, instructions, and training relating to the preparation, storage, and cooking of ground beef). Plaintiffs' counsel has indicated that he will attempt to interview present and past Wendy's employees. Through discovery, he has requested Wendy's to provide the name, last known address, and telephone number of persons who worked at the Wendy's restaurant at any time during February or March 1995. Wendy's has filed a motion for a protective order requesting that I enter a court order providing that defense counsel must be present whenever plaintiffs' counsel contacts Wendy's present employees or former employees.

If I grant this relief that Wendy's seeks, it is less likely that the witnesses will talk to plaintiffs' lawyer or other representative and any "interview" that occurs will more closely resemble a deposition than an interview in its traditional sense. An interview is a valuable investigative tool for the reasons set forth in *Wharton v. Calderon,* 127 F.3d 1201, 1204 (9th Cir. 1997):

"We observe at the outset that a party's right to interview witnesses is a valuable right. Witness interviews are one of the primary investigative techniques. Every federal criminal law practitioner is familiar with '302s,' the FBI's witness interview form and the potential value of access to the 302s in any case. Witness interviews serve a different purpose than depositions. As one court observed:

"[T]here are entirely respectable reasons for conducting discovery by interview vice deposition: it is less costly and less likely to entail logistical or scheduling

problems; it is conducive to spontaneity and candor in a way depositions can never be; and it is a cost-efficient means of eliminating nonessential witnesses from the list completely. *Doe v. Eli Lilly & Co.,* 99 F.R.D. 126, 128 (D.D.C. 1983). See also, *Cacoperdo v. Demosthenes,* 37 F.3d 504, 509 (9th Cir. 1994) ('both sides have the right to interview witnesses before trial') (citations and internal quotations omitted); *United States v. Cadet,* 727 F.2d 1453, 1469 (9th Cir. 1984) ('Witnesses . . . are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them.') (citation and internal quotations omitted)."

Therefore, courts should not interfere with counsel's efforts to interview witnesses except to enforce well-recognized prohibitions.

Pa.R.C.P. 4003.6 is the only provision in the Rules of Civil Procedure governing depositions and discovery that prevents an attorney from obtaining information through an interview. It applies only to information sought from a treating physician.

Wendy's request for a protective order restricting counsel's access to Wendy's present and former employees is based solely on Disciplinary Rule 4.2, which provides that a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter. The relevant portions of the comment to this Rule of Professional Conduct read as follows:

"In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the or-

ganization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization."

The initial issue raised through Wendy's request for a protective order is whether a Pennsylvania court may enter a court order prohibiting or restricting an attorney's access to an opposing party where counsel's communication with that party would violate Disciplinary Rule 4.2. I will address this issue by considering a clear violation of Rule 4.2. Assume that in this case plaintiffs had named an existing Wendy's employee as a defendant based on allegations that the employee had negligently used meat that had not been properly refrigerated and was to be thrown out; this defendant was also represented by the Pietragallo, Bosick & Gordon law firm; and plaintiffs' counsel is leaving telephone messages with this defendant's parents stating that he wants to meet privately with this defendant and that he will consider removing the defendant from the lawsuit if the defendant cooperates.

I recognize that the Pennsylvania Supreme Court has ruled that courts may not use the Rules of Professional Conduct to alter substantive law or evidentiary rules. *Maritrans G.P. Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 602 A.2d 1277 (1992); *In re Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215 (1984). However, a court order based on Disciplinary Rule 4.2 that bars an attorney from communicating with another party who is represented by counsel does not have an impact on the substantive law and rules of evidence that will govern the litigation.

Wendy's request that I enter a court order to prevent a communication prohibited by Disciplinary Rule 4.2 is governed by the case law that imposes responsibility on a trial court to prevent or remedy violations of the

Rules of Professional Conduct that are prejudicial to an adverse party. See *City of Philadelphia v. District Council 33,* 503 Pa. 498, 469 A.2d 1051 (1983); *American Dredging Co. v. City of Philadelphia,* 480 Pa. 177, 389 A.2d 568 (1978). This distinction was recognized in *In re Estate of Pedrick, supra,* 505 Pa. at 542, 482 A.2d at 221, where the court referred to the case law holding that a trial court has the power to regulate the conduct of attorneys practicing before it in order to insure that the parties receive a fair trial.

It does not matter whether Wendy's motion for a protective order is based on Pa.R.C.P. 4012, which states that upon motion by a party and for good cause shown a court may make any order which justice requires to protect a party from unreasonable annoyance, embarrassment, oppression, burden, or expense or whether Wendy's motion is based on a court's inherent authority to issue appropriate orders to prohibit or remedy unethical litigation practices.[1] Whether acting under Rule 4012 or pursuant to its inherent authority, a court will not issue any orders based on Rule 4.2 without good cause shown. This means that Wendy's must show that there is a significant likelihood that plaintiffs' counsel intends to conduct interviews that will violate Rule 4.2.

I next consider whether the interviews that plaintiffs' counsel seeks to conduct are likely to violate Rule 4.2.

---

1. Most of the cases where courts have considered motions to prohibit ex parte communications with employees or former employees have referred to a court's inherent authority to prohibit or remedy litigation practices which raise ethical concerns. See *e.g., Cram v. Lamson and Sessions Co.,* 148 F.R.D. 259 (S.D. Iowa 1993); *Wang Laboratories Inc. v. C.F.R. Associates Inc.,* 125 F.R.D. 10 (D. Mass. 1989); *Aiken v. The Business and Industry Health Group Inc.,* 885 F. Supp. 1474 (D. Kan. 1995).

Where a party to the litigation is an individual who is represented by counsel, it is clear that opposing counsel may not communicate with this individual without the consent of this individual's lawyer. However, Rule 4.2 and its comment do not provide clear direction where a party to the litigation is an organization, and opposing counsel seeks to interview present and past employees of the organization.

Most of the persons whom plaintiffs' counsel seeks to interview are former employees. Neither the text of Rule 4.2 nor its comments specifically refer to former employees. Rule 4.2 does not cover communications with unrepresented persons. While certain persons who are connected with an organization that is represented by counsel should be covered by the representation by virtue of their relationship with that organization, a person who no longer has any relationship with the organization cannot be considered a client. Rule 4.2 bars a lawyer from communicating with "a party the lawyer knows to be represented by another lawyer in the matter." A former employee who has no existing relationship with a corporate party is not a "party." Therefore, the language of Rule 4.2 does not reach communications with former employees who have not retained counsel.

This ruling that Rule 4.2 does not prohibit ex parte communications with any former employees of an opposing party is consistent with formal opinion 91-359 issued by the American Bar Association Committee on Ethics and Professional Responsibility which considered the prohibitions of Rule 4.2 with respect to contacts with a former employee of an opposing party. The opinion concluded that:

"While the committee recognizes that persuasive policy arguments can be and have been made for extending

the ambit of Model Rule 4.2 to cover some former corporate employers, the fact remains that the text of the rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the rule is to inhibit the acquisition of information about one's case, the committee is loath, given the text of Model Rule 4.2 and its comment, to expand its coverage to former employees by means of liberal interpretation.

"Accordingly, it is the opinion of the committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

"With respect to any unrepresented former employee, of course, the potentially-communicating adversary attorney must be careful not to seek to induce the former employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as a former employee with his or her former employer's counsel are protected by the privilege (a privilege not belonging to or for the benefit of the former employee, by the former employer). Such an attempt could violate Rule 4.4 (requiring respect for the rights of third persons)."

The issue of whether a court may prohibit ex parte communications with former employees of an adverse party has arisen in numerous other jurisdictions. The case law almost universally holds that Rule 4.2 does not extend to communications with former employees. This case law is collected and reviewed in *Terra International Inc. v. Mississippi Chemical Corp.*, 913 F. Supp. 1306 (N.D. Iowa 1996); *Cram v. Lamson and*

*Sessions Co., supra;* and *Aiken v. The Business and Industry Health Group Inc., supra.*

A May 1997 opinion of the Florida Supreme Court in the case of *H.B.A. Management Inc. v. The Estate of May Schwartz,* 693 So.2d 541, 542 (1997) (footnote omitted), considered this issue:

"In accord with the overwhelming majority of jurisdictions and bar ethics committees, we hold that Florida Rules of Professional Conduct 4-4.2, governing the contact by attorneys with persons represented by counsel, does not prohibit a claimant's attorney from engaging in ex parte communications with former employees of a defendant-employer."

On December 7, 1990, the Pennsylvania Bar Association's Committee on Legal Ethics and Professional Responsibility issued formal opinion no. 90-142 which addressed the issue of the extent to which lawyers may contact existing and former employees of opposing corporate plaintiffs or defendants. With respect to former employees, the committee concluded that Disciplinary Rules 4.2 and 4.3 allow an attorney to communicate with an organization's unrepresented former employees under the following circumstances:

"(1) The attorney is prohibited from eliciting or using information that may be protected by the attorney-client privilege;

"(2) The attorney must immediately disclose his or her capacity to the former employee;

"(3) If the person contacted requests personal counsel or the company's counsel to be present for the interview, the request must be honored;

"(4) The attorney should advise former employees that they have the right to refuse to be interviewed

or, if they wish, to be interviewed with the company's counsel present;

"(5) The lawyer may not contact a former employee of the opposing party that the lawyer knows to be represented by separate counsel without the consent of that counsel."

In his brief, plaintiffs' counsel recognizes that any ex parte communications with former employees are subject to the constraints of the attorney-client privilege. Under Disciplinary Rule 4.3, plaintiffs' counsel is required to disclose his capacity to former employees; I have no reason to believe that plaintiffs' counsel does not intend to do so. Under Rule 4.2, plaintiffs' counsel cannot contact a former employee who has retained counsel; I have no reason to believe that plaintiffs' counsel intends to do so.

As to the remaining two requirements, it appears from plaintiffs' brief that plaintiffs' counsel intends to follow ABA formal opinion 91-359 which does not impose requirements that the attorney advise former employees that they have the right to refuse to be interviewed or, if they wish, to be interviewed with the company's counsel present. Obviously, an attorney violates Rule 4.3 if the attorney causes an unrepresented person to believe that he or she has an obligation to submit to an interview or if the attorney disregards the request of an unrepresented person that the interview be terminated. However, Rule 4.3 does not impose a *"Miranda"* requirement that unrepresented persons be advised that they have the right to refuse to be interviewed or to be interviewed only with the company's attorney present. Furthermore, since Rule 4.2 does not extend to former employees, this rule cannot be the source of any *"Miranda"* requirement. Consequently, there is no source for this *"Miranda"* requirement in the Rules of Professional Conduct.

For these reasons, I deny Wendy's request for a protective order as to counsel's interviews with Wendy's former employees.

I next consider Wendy's request for a protective order as to present employees.

PBA formal opinion no. 90-142 reached the following conclusions as to present employees of an organization that are represented by counsel:

"I. Conclusions Of The Committee

"The committee concludes as follows:

"(1) Unless a lawyer has the consent of opposing counsel or is authorized by law to do so, in representing a client, a lawyer shall not conduct ex parte communications about the matter of the representation with:

"(a) present managerial former employees of an opposing party, and with any other employee whose acts or omissions may be imputed to the corporation for purposes of civil or criminal liability;

"(b) present employees of an opposing party whose statements may constitute admissions on the part of the corporation; and

"(c) present or former employees of an opposing party when there is a substantial likelihood that the communication will cause or elicit the disclosure of confidential information subject to the attorney-client privilege.

"(2) A lawyer representing a client may conduct ex parte communications about the matter of the representation with:

"(a) present and former employees of an opposing party if such party's counsel consents;

"(b) present and former employees of an opposing corporation if ex parte communication is specially authorized by law;

"(c) present nonmanagerial employees of an opposing party who have not made acts or omissions in connection

with the matter in issue that may be imputed to the party for purposes of its liability and whose statements will not constitute admissions on the part of the corporation; and

"(3) A lawyer may not under any circumstances contact an existing or former employee of the opposing party that she knows to be represented by separate counsel without the consent of that counsel."

These conclusions are consistent with the comment to Rule 4.2 set forth at pages 162 of this opinion and with the discussion of this issue in ABA formal opinion 91-359.

Rule 4.2 as construed in this fashion makes a distinction between present managerial employees and present nonmanagerial employees and another distinction between present nonmanagerial employees who are actors and present nonmanagerial employees who are simply observers. In many instances, the drawing of these lines between managerial and nonmanagerial employees and between actors and observers is very fact specific.

In his brief, plaintiffs' counsel indicates that with respect to present employees, he agrees with and will follow the PBA's construction of Rule 4.2. This does not mean that good faith disputes over the applicability of Rule 4.2 will not occur. In many instances, there are no bright lines for determining who is and is not a present managerial employee and who is and is not an actor, so there may be circumstances in which court intervention would be appropriate. However, at this stage of the litigation, Wendy's has not shown good cause for judicial intervention with respect to any specific present employees.

For these reasons, I enter the following order of court:

## ORDER

On June 23, 1998, it is hereby ordered that defendants' motion for a protective order is denied.